## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 94-CA-00880-SCT

*DONALD E. TAYLOR, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF PRENTISS TAYLOR*

*v.*

*SINGING RIVER HOSPITAL SYSTEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/04/94 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT W. SMITH |
| ATTORNEY FOR APPELLEE: | JAMES H. HEIDELBERG |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 10/2/97 |
| MOTION FOR REHEARING FILED: | October 8, 1997 |
| MANDATE ISSUED: | 11/20/97 |

### EN BANC.

### BANKS, JUSTICE, FOR THE COURT:

¶1. In this case we consider the propriety of a summary judgment in favor of a hospital that was sued for the negligent hire of one of its doctors. Because we find that there was no evidence that the hospital breached any duty in assessing the competence of that doctor, and that, in any event, the alleged breach had no causal relationship to the injury in question, we affirm the grant of summary judgment.

### I.

¶2. In early March 1990, Dennis Thomas, M.D., performed a heart catheterization on Prentiss Taylor at Singing River Hospital in Jackson County, Mississippi. Dr. Thomas analyzed the results from the procedure, and concluded that Mr. Taylor was stable and able to be discharged. On March 6, Mr. Taylor was discharged with medications and instructions to seek further evaluation for possible surgical therapy and to restrict his activities. Three days later, Mr. Taylor was readmitted to the hospital with chest pains. He died of a heart attack that night.

¶3. Soon after Mr. Taylor's (hereinafter "the decedent") death, his survivors threatened on two separate occasions to sue Dr. Thomas for malpractice. They promised not to sue if Dr. Thomas would help them with their financial problems, namely, the $43,000 in funeral expenses and subsequent medical expenses that Mrs. Taylor had accrued while grieving over the death of her husband. Dr. Thomas paid them the money, first $11,000 in alleged funeral expenses, and then $32,000 when the Taylor's threatened to sue again. He had hoped that doing so would avoid the ordeal of defending a lawsuit while practicing as the only cardiologist in the county and raising two young children. Dr. Thomas did not obtain any written release from future liability, although he did understand the deal to be that Mrs. Taylor and her children would not sue him, and Mrs. Taylor had actually offered to sign something if he wrote it out. Indeed, he testified at his deposition that they told him they felt that he had "done right" by Mrs. Taylor and that "should she ever be hospitalized, she would be proud to have [Dr. Thomas] as a doctor if needed."

¶4. These payments notwithstanding, Donald Taylor, who was the decedent's son and executor, sued Dr. Thomas, Dr. Findlay Maier (the referring physician), and Singing River Hospital System. In addition to claiming that Dr. Thomas negligently treated the decedent, Taylor raised a number of negligence claims that arose out of the fact that Dr. Thomas had falsely represented in his 1988 and 1990 applications for renewal of privileges at Singing River that he was board certified in cardiology, when he was in fact only board eligible in that specialty. At no time up until and throughout the pursuit of this action were cardiologists at Singing River required to be board certified; they needed only to be board eligible.[1] Dr. Thomas was board certified in the specialty of internal medicine, and had completed a fellowship and preceptorship in cardiology. During the fellowship and preceptorship, he had performed over three hundred heart catheterizations, over the minimum number required to perform such procedures at Singing River. Following his arrival at Singing River, Dr. Thomas had performed over 1,200 heart catheterizations.

¶5. Singing River did not verify the credential information that Dr. Thomas listed on his applications for renewed privileges, although it had verified as true everything in his initial application for privileges in 1985. J.F. Scarbrough, the hospital administrator during the period that Dr. Thomas worked there, noted in his deposition that the purpose of the re-application process was to review the physician's performance since his last application, not to reverify all of the credentials. He further stated that the reason the hospital did not bother to verify that he had become board certified in cardiology as stated on his applications for reappointment to the staff was because there was no requirement in its bylaws for doctors to have such certifications.

¶6. The referring physician was eventually dismissed from the lawsuit by agreement without payment of any funds to Plaintiff Taylor (hereinafter "Taylor"), and Dr. Thomas ultimately settled his disputes with Taylor after several of those claims against him were dismissed on summary judgment. This appeal arises out of Taylor's claims against Singing River Hospital. Taylor sued Singing River for committing administrative negligence. Taylor alleged the hospital's negligence to include (a) failing to properly check the credentials of Dr. Thomas; (b) improperly allowing Dr. Thomas to perform heart catheterizations when it knew or should have known that Thomas had falsified his credentials; and (c) negligently allowing Thomas to hold himself out as a cardiologist which resulted in the public and other staff physicians relying upon Thomas to have qualifications, credentials and a level of expertise which he did not have.

¶7. The circuit court of Jackson County granted Singing River summary judgment on all of Taylor's claims. The court held that Singing River was entitled to judgment as a matter of law because Taylor had failed to show that Singing River had any duty to insure that Dr. Thomas was board certified to practice cardiology, since only board eligibility was required to be competent to do so under the law and the Hospital's bylaws. The court also concluded that the fact of Dr. Thomas' false representations about his credentials to Singing River was unrelated to his competence as a doctor, and was also unrelated to Singing River's duty to make sure its doctors are competent. Finally, the court found that, even if Singing River had some duty to investigate whether Dr. Thomas had falsified his credentials, Taylor had failed to make any showing that this breach caused the decedent's death. The court also issued a second order, ruling in the alternative that Singing River was immune from suit under Miss. Code Ann. § 41-13-11. Taylor presently appeals this judgment, raising several issues in addition to his argument that the summary judgment was improperly granted.

## II.

## A. Grant of Summary Judgment

¶8. This Court reviews summary judgment decisions *de novo*, and such review consists of determining whether there were no genuine issues of material fact such that the moving party was entitled to judgment as a matter of law. If any triable issues of fact exist, the lower court's decision to grant summary judgment must be reversed. **Brown v. Credit Ctr., Inc.**, 444 So. 2d 358, 362 (Miss. 1983).

¶9. In this case, the circuit court granted Singing River summary judgment on three alternative grounds: that the undisputed facts indicated that Singing River had breached no legal duty in renewing Dr. Thomas' privileges, that Taylor had failed to demonstrate that any negligence had caused the death at issue, and that Singing River was immune from suits such as this under Miss. Code Ann. § 41-13-11. We address each ruling in turn.

### 1. Breach of Duty

¶10. In its first Order, the trial court made several findings of fact, and thereafter concluded that the evidence clearly showed that Dr. Thomas had met all of the requirements necessary for staff privileges as well as the performance of heart catheterizations. The court noted that this Court had not recognized a cause of action against hospitals for failure to exercise reasonable care in both selecting competent medical staff members as well as in reviewing and restricting staff privileges to prevent incompetent physicians from being retained on the staff. It nevertheless addressed the requirements necessary to prevail in the event that this Court concluded that such an action would sound. The court concluded that Singing River had met any such duty in this case because even though Singing River failed to discover Dr. Thomas had lied about his board certification, he was nevertheless a *competent* physician on the undisputed facts; the credential about which he lied was one that he was not required to have to be a legally competent cardiologist, and thus Singing River had no duty to verify that it was true. The record was devoid of any evidence that Dr. Thomas was incompetent by his education, experience, training or performance: "Without some evidence that Dr. Thomas was incompetent or unfit to perform heart catheterizations and further that Singing River Hospital System knew or should have known of his incompetence or unfitness, the claims against the hospital would fail under a theory of corporate negligence." The court further found in the alternative

that summary judgment was proper because Taylor had not set forth any proof that Singing River's alleged negligence had actually caused the decedent's death.

¶11. Taylor does not address the circuit court's ruling that Singing River had no duty to investigate whether Dr. Thomas was indeed a board certified cardiologist, except with the bare argument that Dr. Thomas' competence included submitting a truthful application for renewal of privileges, and thus Singing River's failure to discover the false statement was negligent. In response to the trial court's finding that he had not put on any evidence that Singing River's purported negligence actually caused the decedent's demise, Taylor argues that he had submitted an affidavit from the referring physician to the effect that had he been aware that Dr. Thomas had presented false information, he would not have referred the decedent to his services, since he would question Dr. Thomas' integrity.[2]

¶12. We agree with the lower court that the undisputed facts in this record disclose no breach of duty on the part of Singing River.[3] First, as the record reveals and both parties concede, the credential which Singing River failed to verify was not one that was required as a matter of law or hospital policy for Dr. Thomas to be competent to perform heart catheterizations. Thus, the failure of Singing River to ensure that Dr. Thomas was board certified is legally inconsequential.

¶13. The more subtle question is whether the hospital's duty to determine whether Dr. Thomas was competent included ascertaining that he was truthful in his representations. Although the circuit court did not address the import of this aspect of Dr. Thomas' misrepresentation in its written ruling, the court did express disbelief from the bench in the notion that his untruthfulness was so relevant to his competence as to create a duty on the hospital to verify every item of information that appeared in Dr. Thomas' re-applications. Although Taylor presently reiterates this position that truthfulness is a component of a doctor's competence, he does not cite any authority in his support. Likewise, Singing River offers no square authority for its proposition that a candidate's truthfulness is *not* relevant to his competence, beyond repeatedly noting the fact that the credential about which Dr. Thomas lied was irrelevant to his *medical* competence to practice cardiology. In some circumstances, we can conceive that a candidate's truthfulness might well be relevant to a doctor's fitness for privileges, inasmuch as a dishonest doctor might engage in other misrepresentations and lies that were detrimental to a patient's medical care.

¶14. Nevertheless, the relevant query in this case is whether the law imposes upon a hospital a duty to assess the truthfulness of its doctors by reverifying all of the credentials (including credentials that are substantively irrelevant) that appear on an application for renewal of privileges from a doctor whose work has been observed by the hospital for several years, even where the hospital has thoroughly verified credentials that appeared on the first application and has not been given any reason in the course of the relationship to suspect that the applicant may be prone to misrepresentation. Taylor did not offer any evidence that the standard of care in ascertaining doctors' fitness for renewed privileges included checking that they had reported all of their credentials truthfully, even those that were not required for renewal. As noted above, the hospital administrator of Singing River testified at his deposition that such credential changes in applications for reappointment were not verified at the time of Dr. Thomas' applications, since they were superfluous. He did state at the deposition that the procedure had been changed since this incident, and applications for reappointment are now fully verified.

¶15. In any event, we have found no case law that assesses this type of "incompetence": an applicant's willingness to make misrepresentations on his applications for hospital privileges that are utterly unrelated to medical competence to practice, and unaccompanied by any other concerns that the doctor's medical performance was even remotely unacceptable. *Compare e.g., **Lopez v. Central Plains Reg'l Hosp.**,* 859 S.W. 2d 600, 603-4, (Tx. App. 1993) (holding summary judgment in favor of hospital on negligent selection claim improper where plaintiffs presented an affidavit averring that hospital should have further investigated the doctor's actual clinical competence in handling high-risk obstetrics, notwithstanding abundant evidence that hospital had verified doctor's credentials and obtained letters of recommendation, and observed his practice for a year); *compare also **Johnson v. Misericordia Community Hosp.**,* 301 N.W. 2d 156 (Wis. 1981) (upholding jury finding of negligent selection where hospital failed to verify any of the information given in an initial application for privileges, where doing so would have revealed that the doctor had made numerous misstatements, and had in fact experienced denial and restriction of his privileges elsewhere, was neither board eligible nor board certified in the specialty applied for, had been the target of ten malpractice suits, and had led several doctors who had worked with him to conclude that he was not competent).

¶16. In any case, we find that the record in this case amply supports the summary judgment. Taylor did not place any evidence into the record that the standard of care in ascertaining competence for reappointment of doctors whose work is well known to the staff would nevertheless include verifying all of the information provided in the application about superfluous credentials. In light of that, we hold that the adverse summary judgment was proper on these grounds.

### 2. Causation

¶17. The circuit court alternatively held that summary judgment was proper because Taylor had offered no evidence whatsoever that the Hospital's negligent selection of Dr. Thomas, if any, caused Prentiss Taylor's death; all parties concede that Dr. Thomas was medically competent in terms of training, experience and licensure to perform the decedent's heart catheterization. There was no evidence that Mr. Taylor relied on the fact or even knew that Dr. Thomas had represented himself as board certified.

¶18. In his present appeal, Taylor reiterates the fact that the referring physician had testified that he would not have referred Mr. Taylor to Dr. Thomas had he known that he had lied about his credentials to the hospital. Therefore, according to Taylor's theory, Dr. Thomas never would have touched the decedent had the referring physician, Mr. Taylor, or his family known that Dr. Thomas misrepresented his credentials.

¶19. Simply put, the evidence in this case does not rationally suggest that the hospital's failure to uncover the lie caused Mr. Taylor's death. There is no evidence in the record that suggests that even if Singing River had uncovered the lie, and had consequently denied Dr. Thomas a reappointment,[(4)] the referring physician would have *known* that he'd been denied privileges because of his dishonesty. He may have made the referral to Dr. Thomas anyway, at another facility where Dr. Thomas already had privileges or had applied more honestly for privileges, given that Dr. Thomas was the only cardiologist in the county at the time. Indeed, the record is simply devoid of any evidence of causation that could have legally defeated Singing River's motion for summary judgment on this ground.

## B. Remaining Claims

¶20. Taylor raised several other issues that would be relevant only had we reversed the grant summary judgment. It follows that it is wholly unnecessary to reach these remaining issues. We therefore decline to do so.

### III.

¶21. For the foregoing reasons, the judgment below is affirmed.

**¶22. AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**


**McRAE, JUSTICE, DISSENTING:**

¶23. I disagree with the majority's decision to affirm the circuit court's grant of summary judgment in favor of Singing River Hospital. Whether the hospital breached its duty in assessing Dr. Thomas' competence and the degree of causation between the alleged breach of duty and Taylor's death were sufficiently disputed so as to raise questions for a jury to determine. Accordingly, I dissent.

¶24. Singing River requires that its physicians be either board-eligible or board-certified in their areas of specialization. Moreover, pursuant to Miss. Code Ann. § 73-25-29 (8) (Supp. 1997), a physician's license may be suspended or even revoked for unprofessional conduct, which includes the misrepresentation of his credentials. It therefore is incumbent upon the hospital to check and double check the qualifications of its staff to make sure that its patients receive the best quality care.

¶25. In the case *sub judice,* the hospital benefitted greatly from the more than twelve hundred extremely lucrative heart catheterizations performed by Dr. Thomas. Although a relatively routine operation, it is, nevertheless, an invasive and often risky procedure. It should be performed only by a properly qualified surgeon. Whether the hospital breached its duty to its patients in its eagerness to provide this service should be determined by a jury. In addition, the determination of whether any breach by the hospital led to Taylor's death should also be made by a jury. Accordingly, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**



1. According to this record, a doctor who is "board eligible" in a specialty has completed all of the required training in that specialty; a doctor who is "board certified" has completed the training and taken board examinations in the field. Apparently, many doctors decline to take the exams because they are unnecessary to practice in the specialty in most places.

2. This same physician testified at his deposition that notwithstanding his reservations about Dr.

Thomas' integrity, he did not question Dr. Thomas' competency as a cardiologist.

3. As a preliminary matter, this Court has suggested that a cause of action can lie against a hospital for negligently hiring and retaining incompetent physicians. In *Mississippi Baptist Hosp. v. Holmes*, 214 Miss. 906, 55 So. 2d 142 (Miss. 1951), *suggestion of error on other grounds overruled,* 56 So. 2d 709 (Miss. 1952), we considered a claim that a hospital had been negligent in selecting a hiring and retaining a blood technician who was alleged to have been incompetent. Far from declaring that no such action would lie, we instead evaluated the claim, and found that the hospital had complied with its duty to use reasonable care in retaining competent staff members. Although the technician in that case had clearly engaged in negligence for which he was individually liable, and for which the hospital was liable via the doctrine of *respondeat superior*, we found that the hospital had met its duty in ensuring that the negligent technician was nevertheless competent enough to have been reasonably hired. We found that the hospital's duty had been met since the technician had come to the hospital highly recommended, had previously served as a technician in other hospitals, had satisfactorily completed all of his several courses of preparatory training, and had studied at college (although he failed some of the courses): "[This] case presents the tragic consequence alleged to have proximately resulted from the very negligent act of one who had theretofore shown himself highly competent to do the work that he was employed to do." *Id.*, 214 Miss. at 917, 55 So. 2d at 145. *See also **Eagle Motor Lines v. Mitchell***, 223 Miss. 398, 412, 78 So. 2d 482, 487 (1955) (holding common carrier of freight had duty to exercise reasonable diligence to investigate the competency of its applicants selected for employment).

In suggesting that we have not recognized such an action, the lower court relied on ***Hardy v. Brantley***, 471 So. 2d 358, 371 n.6 (1985), in which we declined to ascertain the validity of a corporate negligence doctrine that would allow liability against hospitals for failing to meet its responsibility of insuring competent medical staff. That opinion noted the trend of imposing such duties on hospitals that is emerging in other jurisdictions. We did, however, suggest toward the close of the opinion that the plaintiff in that matter might proceed on such a theory of corporate negligence. *Id.* at 371 n.6 (collecting authority) & 374 n.8; *see also* Jack W. Shaw, Jr., J.D., *Hospital's Liability for Negligence in Selection or Appointment of Staff Physician or Surgeon,* 51 ALR 3d 981 (1973 and Supp. 1995).

4. There is also no evidence that Singing River would have denied Dr. Thomas' application for reappointment had they discovered that he had falsified his board certification. While Singing River did suspend his privileges for a time when they found out about it (or, more technically correct, allowed him to resign since he had not been shown to be medically incompetent), they readmitted him to the staff in 1992 to practice internal medicine, the field in which he remained board eligible and board certified.