**Irene LOPEZ and Domingo Lopez, individually and as Next Friends and Natural Parents of Celeste Lopez, a minor**

**v.**

**CENTRAL PLAINS REGIONAL HOSPITAL.**

**No. 07–92–0056–CV.**

Court of Appeals of Texas, Amarillo.

July 30, 1993.

Scott M. Lewis, Rockwall, Volk & Montes by Jose Montes, Jr., El Paso, for appellant.

Fulbright & Jaworski by Gail N. Friend, Houston, Martha J. Hess, San Antonio, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

A take-nothing summary judgment terminated the health care liability action initiated by Irene Lopez and Domingo Lopez, individually, and as next friends and natural parents of Celeste Lopez, a minor, against Central Plains Regional Hospital (CPRH), a Hale County health care provider. On the rationale expressed, the trial court's judgment will be affirmed in part and reversed in part, with a remand of a portion of the cause to the trial court.

■ Accepting, for summary judgment purposes, the evidence favorable to the Lopezes with any doubts resolved in their favor, *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985), we find the record reveals that on 24 September 1986, Irene Lopez, who was pregnant, met with her treating obstetrician, Dr. Stephens Triplett. After examining her, Dr. Triplett recommended that she enter CPRH the following morning so he could induce labor. She was admitted on September 25 and, at about 6:00 a.m., Dr. Triplett ordered she be given Pitocin, a uterine-stimulating drug, through intravenous infusion to induce labor. Throughout the day, Dr. Triplett monitored Irene's condition. At some point while Pitocin was being administered, the fetal monitor was disconnected and, when it was reconnected, the fetal heart-rate pattern showed signs of fetal distress. Thereafter, around 8:00 p.m., Dr. Triplett determined that Irene was not progressing. He ordered that she

be allowed to rest from the Pitocin induction and that a meal be given to her. Later that same evening, Dr. Triplett, after again examining Irene, ruptured her bag of amniotic fluids, thereby stimulating labor. At 10:30 p.m., Irene delivered Celeste through normal vaginal delivery. Celeste was born with a brachial plexus injury, a partial paralysis of her left arm.

Almost two years later, the Lopezes filed this action against Dr. Triplett, South Plains Health Provider Organization, and CPRH.[1] With respect to their action against CPRH, the Lopezes alleged that acts or omissions by CPRH's employees and agents caused their damages. As to the acts or omissions, the Lopezes alleged first, that nurses employed by CPRH negligently failed to evaluate and monitor Irene's health during her prenatal period and during her subsequent labor and delivery; and they negligently failed to monitor, assess, and evaluate Celeste's health while she was in utero. Specifically, the Lopezes asserted that CPRH's nurses acted negligently by removing the fetal monitor while Pitocin was running and by offering Irene a meal.

Second, the Lopezes alleged that CPRH is vicariously liable, because Dr. Triplett was an apparent agent of CPRH and his negligent failure to deliver Celeste by Cesarean section caused Celeste's injuries. Third, the Lopezes claimed that CPRH acted negligently by granting Dr. Triplett obstetric privileges when CPRH knew, or should have known, that he was incompetent and thus undeserving of such privileges. Fourth, the Lopezes alleged that, by granting Dr. Triplett privileges when he was not licensed to practice in Texas, CPRH violated the Texas Medical Practice Act, which constituted negligence per se. Fifth, the Lopezes asserted that CPRH violated the Texas Deceptive Trade Practices Act ("DTPA") because CPRH knew Dr. Triplett was not licensed to practice in Tex-

as, yet it allowed him to deliver Celeste. Finally, the Lopezes claimed that CPRH negligently failed to obtain Irene's informed consent because CPRH did not tell Irene that Dr. Triplett was not licensed to practice in Texas and that he had failed his medical boards.

Subsequently, CPRH moved for summary judgment, supporting its motion with affidavits and deposition testimony. The grounds presented for entitlement to judgment were that: (1) Dr. Triplett was licensed to practice medicine by the Federal Government and, therefore, was licensed in Texas on 25 September 1986; (2) no cause of action for breach of warranty or under the DTPA exists against CPRH; (3) Dr. Triplett is neither an ostensible or actual agent of CPRH; (4) CPRH had no duty to obtain a patient's informed consent for medical treatment; (5) no act or omission on the part of the nurses or CPRH proximately caused or contributed to any injury to Celeste; and (6) CPRH properly credentialed Dr. Triplett and allowed him to practice at its facility prior to 25 September 1986.

The Lopezes filed a response to CPRH's motion. They submitted that their attached affidavits and deposition testimony showed the existence of genuine issues of material fact, which precluded summary judgment.

■ In appealing from the take-nothing summary judgment, the Lopezes have advanced ten points of error, the first of which is a general contention of error on the part of the trial court in rendering summary judgment. Absent a particularization of trial court error under the first point, it will not be further noticed, and we will consider the points of specific error. First consideration is given to the Lopezes' point-two contention that the evidence raised disputed fact issues on the issue of CPRH's negligent credentialing.[2]

---

1. In rendering the summary judgment, the trial court dismissed CPRH's cross-actions against South Plains Health Provider Organization and Dr. Triplett, and severed the Lopezes' action against CPRH from the original suit.

2. Because a hospital has a duty to its patients to exercise reasonable care in the selection of its medical staff, a cause of action exists for negligent credentialing. *Park North General Hosp. v. Hickman,* 703 S.W.2d 262, 266 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

When CPRH moved for summary judgment on the negligent-credentialing aspect of the Lopezes' action, it presented an abundance of summary judgment proof preponderating in favor of its exercise of reasonable care in the credentialing of Dr. Triplett. In brief, the affidavits and deposition testimony showed that CPRH's screening policy was aggressively executed by inquiring into Dr. Triplett's credentials, obtaining letters of his competency from the supervisors of his residency program, receiving recommendations of his medical competency and his qualifications to practice obstetrical and gynecological medicine, verifying his previous licensure, and monitoring his performance for almost a year, with the result that board certified obstetricians rated him capable of handling the privileges he was given.

In addition, CPRH showed by the affidavit of Dr. David R. Smith, a licensed, board certified and practicing pediatrician in Texas, and a former Commissioned Officer in the United States Public Health Service, that Dr. Triplett was credentialed by the United States Public Health Service—National Health Service Corps, which qualified him to practice in any state or territory of the United States. In Dr. Smith's opinion, Dr. Triplett was a federal-hire physician as of 25 September 1986 and, as such, was qualified to practice in Texas through federal supremacy and to meet the credentialing requirements of CPRH.

Notwithstanding, the Lopezes countered with the affidavits of A. Dean Cromartie, Jr., a medical doctor licensed to practice in the State of Mississippi and certified by the American College of Obstetricians and Gynecologists, and Judson F. Marsters, a hospital administrator in Texas, who holds a masters degree in hospital administration and is a Fellow of the American College of Health Care Executives. Each of the affiants certified that he had read the medical records, depositions, affidavits, and discovery documents produced by CPRH. Additionally, the Lopezes evidenced that on 15 September 1986, Texas cancelled the physician's temporary license which had been granted Dr. Triplett and, upon his application for a license by reciprocity, granted him another temporary license on 1 December 1986.

Doctor Cromartie averred that the standard of care in the staff credentialing process for a hospital such as CPRH is a national standard and he is familiar with that standard. He opined that CPRH violated the standard of care by failing to obtain any information about Dr. Triplett's actual clinical competency in handling obstetrics, especially high-risk obstetrics, and in permitting him to practice without a valid Texas license. CPRH has not challenged this part of Dr. Cromartie's affidavit.

Marsters averred that he was familiar with the standards of care of a reasonably prudent credentialing committee and administrative staff for hospitals such as CPRH. In his opinion, CPRH fell below the standard of care by failing, as illustrated by the evaluation forms it used, to advise the addressees of the privileges for which Dr. Triplett was applying, and to request any in-depth opinions or documentation on Dr. Triplett's competence in those areas, and particularly in the area of obstetrics, especially since the doctor did not have an unrestricted Texas license, which, he said, violated CPRH's own bylaws. In particular, Marsters noticed that when the hospital where Dr. Triplett served his internship was asked for an evaluation of his internship performance under "competence of skill," the evaluator made no comment at all. CPRH made no effort to pursue the lack of response and its failure to do so was, in Marsters' view, negligent credentialing.

Marsters' affidavit was attacked by CPRH on the ground that it is incompetent to raise any fact issue. This results, CPRH states, because Marsters admitted that only physicians may credential physicians, and he was neither a physician nor participated in physician credentialing. However, the thrust of Marsters' affidavit was not that the physicians were negligent in credentialing Dr. Triplett; instead, its thrust was that the evaluation procedures and tools used by CPRH in its credentialing

process were below the standard of care accepted by hospitals for verification of the credentials of a physician coming on staff to perform high-risk obstetrics. CPRH has not challenged Marsters' training and experience by which he became, as he said, familiar with the standard of care of a reasonably prudent credentialing committee and administrative staff for hospitals such as CPRH. It is settled that one who has specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue may express an opinion about a matter within the scope of the specialized knowledge. Tex.R.Civ. Evid. 702.

Given the reality that the summary judgment evidence on the issue of negligent credentialing is conflicting and subject to more than one interpretation, and the principle that the version most favorable to the Lopezes must be accepted, *Valley Stockyards Company v. Kinsel*, 369 S.W.2d 19, 20 (Tex.1963), it follows that the conflicting evidence presents the fact issue whether CPRH was negligent in credentialing Dr. Triplett. Therefore, the trial court erred in rendering a take-nothing summary judgment on this aspect of the Lopezes' action. *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). The Lopezes' second point of error is sustained.

█ As one facet of their allegations of negligence and proximate cause, the Lopezes claimed that Dr. Triplett should have delivered Celeste by Caesarean section rather than vaginally, although the doctor was of the opinion that a Caesarean was not medically indicated. The claim is the reference for their third-point contention that the evidence raised disputed issues of material fact on the issue of proximate cause. In addition to charging CPRH with negligent credentialing and staffing of Dr. Triplett, the charge addressed under point of error two, the Lopezes assert that the direct negligence of CPRH occurred when the nurses, who were attending Irene Lopez in labor, disconnected the electronic fetal heart monitor while Pitocin was running, which was one of the series of events that led to Celeste's injury. The fact is-

sues of negligence and proximate cause were raised, they propose, by the affidavit of Dr. Cromartie. The portion of the affidavit upon which they rely was the doctor's testimony that when the nurses reconnected the monitor, it showed the fetal heart rate pattern was changed and clear signs of distress. This, he said, "probably caused Dr. Triplett to make the hasty decision to deliver this baby vaginally." Had Irene Lopez been monitored and assessed in an appropriate standard of care manner, he concluded, "the warning signs of fetal distress hopefully would have been picked up much earlier, allowing time for the assessment of the patient and planning for a cesarean section by a competent physician with privileges to perform same."

CPRH candidly concedes that, although Dr. Cromartie's testimony of negligence on the part of the nurses in disconnecting the fetal monitor was controverted, the issue of negligence may have been raised. Nevertheless, CPRH urges there is no fact issue whether the negligence of the nurses was a proximate cause of Celeste's injury. This obtains, CPRH submits, because Dr. Cromartie's testimony that had Irene Lopez been properly monitored, "the warning signs of fetal distress hopefully would have been picked up much earlier," and the failure to do so "probably caused Dr. Triplett to make the hasty decision to deliver this baby vaginally," is insufficient to establish a casual connection between the negligence of the nurses and the injury suffered by Celeste. We agree.

When confronted with CPRH's motion for summary judgment on the issue of proximate cause, the Lopezes, to raise a fact issue, were required to present proof by competent testimony that the negligence of the nurses proximately caused Celeste's injury. The testimony must show a causal connection beyond the point of conjecture; proof of mere possibilities does not raise a fact issue. *Accord Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex.1988). It is obvious that Dr. Cromartie's affidavit testimony of proximate cause is couched in terms of "hopefully" and "probably," which amounts to no more than possibilities and, therefore, is based upon mere

speculation and conjecture. As such, it is insufficient to raise a fact issue of proximate cause. *Id.* The Lopezes' third point of error is overruled.

■ In logical progression, we next consider the Lopezes' eighth-point presentation that summary judgment was precluded by the existence of fact issues whether Dr. Triplett was an ostensible agent of CPRH. The Lopezes recognize that ostensible agency, a form of estoppel, is comprised of three elements, on which, to escape summary judgment, they must raise a fact issue that: (1) they have a reasonable belief in Dr. Triplett's authority; (2) their belief must be generated by some holding out by act or neglect of CPRH; and (3) they must justifiably rely on the representation of authority. *Nicholson v. Memorial Hosp. System,* 722 S.W.2d 746, 750 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

When CPRH moved for summary judgment on this issue, it evidenced that Irene Lopez and Dr. Triplett had an ongoing patient-physician relationship long before she and the doctor agreed upon her admission to CPRH on 26 September 1986. There was no contract between CPRH and Dr. Triplett; indeed, the doctor was an independent contractor who held associate medical staff privileges and, in that capacity, CPRH had no authority to direct or control his practice. CPRH did not bill nor collect for Dr. Triplett's services to his patients.

In response, the Lopezes filed the affidavit of Irene Lopez, upon which they rely on appeal to create a fact issue of agency. She stated that "[a]s far as [she] understood, Dr. Triplett was employed by ... Central Plains Regional Hospital, as he delivered Celeste there." Further, she continued, "[a]ll deductible payments made were made to ... Central Plains Regional Hospital," and "[t]here were never any bills from Dr. Triplett, or were there any payments made to Dr. Triplett."

The Lopezes represent that their cause fits well within the doctrine of *Baptist Memorial Hosp. System v. Smith,* 822 S.W.2d 67 (Tex.App.—San Antonio 1991, writ denied), and the previously cited *Ni-cholson v. Memorial Hosp. System.* We do not agree that the Lopezes' situation fits within the circumstances of *Smith.* There, a jury found, after a conventional trial on the merits, that the physician was an ostensible agent of the hospital upon evidence that the hospital had contracted with a group of physicians to staff its emergency room, the physician rendering treatment was hired by the group of physicians, a patient entering the emergency room would ask for a doctor to render treatment, and the hospital billed the patient for services of the emergency room doctor. Those are not the circumstances in the Lopezes' action.

■ We do agree, however, that the Lopezes' situation fits well within the circumstances of *Nicholson,* where a summary judgment was affirmed when plaintiff-appellant, under circumstances very similar to those in the Lopezes' action, failed to raise a fact issue on each element of ostensible agency. 722 S.W.2d at 750. Here, it is at once apparent that Irene Lopez's affidavit does not controvert CPRH's evidence that Dr. Triplett was not its agent. In particular, she failed to produce any evidence to raise the fact issues that she believed an agency existed because of some representation by CPRH, and that she justifiably relied upon such representation. Under these circumstances, CPRH's evidence established as a matter of law there was no agency. *Nicholson v. Memorial Hosp. System,* 722 S.W.2d at 750; *Jeffcoat v. Phillips,* 534 S.W.2d 168, 172–73 (Tex. Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). The Lopezes' eighth point of error is overruled.

■ The Lopezes utilize their points four, five and six to charge the trial court with error in rendering summary judgment because the evidence raised disputed fact issues whether (4) Dr. Triplett was licensed to practice medicine in Texas, and (5–6) CPRH and Dr. Triplett violated the Texas Medical Practice Act. It is the Lopezes' position that because Dr. Triplett's temporary Texas license was cancelled on 15 September 1986, CPRH was required by its bylaws to automatically suspend his hospi-

tal privileges, but did not do so until 28 October 1986. The Lopezes accept, arguendo, the evidence that Dr. Triplett was a federal-hire physician, credentialed by the United States Public Health Service—National Health Service Corps, and, as such, was licensed to practice medicine in Texas on 25 September 1986. Nevertheless, they argue that because Dr. Triplett examined and treated Irene Lopez on the preceding September 15th and 24th, performing a non-stress test on her at CPRH on September 24, there is a fact issue whether CPRH negligently allowed him to practice medicine without a Texas license in violation of the Texas Medical Practice Act. *See* Tex. Rev.Civ.Stat.Ann. art. 4495b §§ 3.07(a), (e) (Vernon Supp.Pamp.1993).

As the first of three threshold matters, we notice that in connection with Dr. Smith's affidavit evidence that Dr. Triplett was a National Health Service Corps physician on 25 September 1986, the Public Health Service Act then provided:

> Notwithstanding any other law, any member of the [National Health Service] Corps and licensed to practice medicine, osteopathy, dentistry, or any other health profession in any State shall, while serving in the Corps, be allowed to practice such profession in any State.

42 U.S.C.S. § 254f(i) (Law.Co-op.1978 & Supp.1987).[3] It is not disputed that on 25 September 1986, Dr. Triplett was licensed to practice in West Virginia and Pennsylvania.

Second, we observe that the Texas Medical Practice Act was formulated to regulate the granting of the privilege of practicing medicine to individuals, not to hospitals. Tex.Rev.Civ.Stat.Ann. art. 4495b § 1.02(1) (Vernon Supp.Pamp.1993). CPRH is not licensed to practice medicine, nor is there any evidence that it held itself out to be practicing medicine.

And third, although earlier in his deposition, Dr. Triplett said he thought, but was not sure, that the non-stress test was performed on September 24 at CPRH, he later stated affirmatively that he did not see any patients at CPRH from September 15 until the date of Celeste's delivery. CPRH's records reveal that no test was given Irene Lopez at the hospital on September 24, albeit a non-stress test was performed after her admission on September 25.

■ CPRH's records further reveal that in September, 1986, it had not received notification that Dr. Triplett's temporary Texas license, which was scheduled to expire on 1 October 1986, was cancelled on September 15. In any event, CPRH is not culpable for Dr. Triplett's private performance occurring outside the hospital before Irene Lopez was admitted, particularly absent evidence raising a fact issue of a causal connection between his prior acts and the injury suffered by Celeste. *Lenger v. Physician's General Hospital, Inc.,* 455 S.W.2d 703, 706 (Tex.1970). The Lopezes' fourth, fifth, and sixth points of error are overruled.

■ With their seventh point, the Lopezes fault the trial court for rendering summary judgment because the DTPA[4] applies to the conduct of both CPRH and Dr. Triplett. This results, they argue, because CPRH, by sponsoring and permitting the doctor to practice medicine without a Texas license, was inextricably intertwined in the transaction between Irene Lopez and Dr. Triplett, who held himself out as a licensed physician, yet did not have a license to practice medicine.

The immediate difficulty with the Lopezes' argument is that, as noted earlier, Dr. Triplett was authorized to practice in Texas when Irene Lopez was admitted to the hospital, and CPRH was not responsible for the doctor's private practice before that time. More important, however, is that, as the Lopezes correctly state in their brief, they "brought the instant health care liability claim pursuant to Tex.Rev.Civ.Stat. Ann. Art. 4590i," because their action

---

**3.** After 1986, Congress redesignated § 254f(i) as § 254f(e) and amended it to substitute "osteopathic medicine" in lieu of "osteopathy." (Law. Co-op.1978 & Supp.1993).

**4.** Deceptive Trade Practices–Consumer Protection Act, Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon 1987 & Supp.1993).

against CPRH is founded upon their allegations of its negligence. Article 4590i, the Medical Liability and Insurance Improvement Act of Texas (Vernon Pamp.1993), controls health care liability claims, and its section 12.01(a) provides that no provision of the DTPA shall apply to physicians or health care providers with respect to claims for damages for personal injury resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider. Thus, section 12.-01(a) precludes the Lopezes' alleged DTPA action based on their health care liability claim founded on negligence. *Waters ex rel. Walton v. Del–Ky, Inc.*, 844 S.W.2d 250, 258 (Tex.App.—Dallas 1992, no writ). The Lopezes' seventh point of error is overruled.

The Lopezes utilize their ninth and tenth points of error to contend that the trial court erred in rendering summary judgment because CPRH failed to provide Celeste's attorney ad litem with a copy of the motion for summary judgment and with notice of the hearing on the motion. This failure, the Lopezes argue, violated the Texas Rules of Civil Procedure and Celeste's due-process rights.

The lack of notice was not expressly presented to the trial court by the Lopezes' response to CPRH's motion for summary judgment, or otherwise, as a reason to *avoid* CPRH's entitlement to judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). It was only when they moved for a new trial that they lodged the complaint, accompanied by an affidavit by the attorney ad litem. However, in overruling the Lopezes' motion for new trial, the trial court determined "that proper notice had been given." The Lopezes have not challenged this determination. The ninth and tenth points of error are overruled.

■ The transcript in this appeal consists of 2791 pages, which apparently is a reproduction of the trial court's entire file, at a cost of $6,090.25. A large number of the pages consist of correspondence, trial briefs, and superseded, as well as duplicate, pleadings. By a cross-point, CPRH

has asked that costs be assessed to the Lopezes for their failure to limit the appellate record to the material necessary to present their points of error, asserting that they did not need at least three-fourths of the material to present their points.

Rule 53(e) of the Rules of Appellate Procedure provides that if a party requires more of the record than is necessary to present its appeal, that party *"shall* be required" to pay the costs of the unnecessary material regardless of the outcome of the appeal. Tex.R.App.P. 53(e). (Emphasis added.) Our review of the record, with due deference to the right of the Lopezes to fully present their appeal, clearly shows that sixty percent of the record was unnecessary for the presentation of the points of error. Thus, sixty percent, or $3,654.15, of the cost of the record should be assessed as costs to the Lopezes. *See Planet Plows, Inc. v. Evans*, 600 S.W.2d 874, 877 (Tex. Civ.App.—Amarillo 1980, no writ).

Accordingly, that portion of the trial court's judgment decreeing that the Lopezes take nothing on their cause of action against CPRH for negligent credentialing is reversed, and that cause of action is remanded to the trial court. In all other respects, the take-nothing summary judgment is affirmed.

The Lopezes were successful in the sustainment of only one of their ten points of error on appeal. Therefore, of the costs occasioned by this appeal, $3,654.15, plus ninety percent of the remaining costs, are assessed against the Lopezes, and ten percent of the remaining costs are assessed against CPRH. Tex.R.App.P. 89.