Dismissed in Part; Affirmed in Part; Reversed and Rendered in Part;
Reversed and Remanded in Part; and Opinion filed June 2, 2005









Dismissed in Part; Affirmed in Part; Reversed and
Rendered in Part; Reversed and Remanded in Part; and Opinion filed June 2, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01084-CV

____________

 

DOUGLAS WOHLFAHRT,
M.D. AND LYNN WOHLFAHRT, Appellants

 

V.

 

JOHN H. HOLLOWAY, Appellee

 

____________

 

NO. 14-03-01130-CV

 

____________

 

JOHN H. HOLLOWAY, Appellant

 

V.

 

DOUGLAS WOHLFAHRT, M.D. AND LYNN
WOHLFAHRT, Appellees

 

 



 

On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause Nos. 92-10256; 92-010589; 92-010590

 










O P I N I O N

Douglas Wohlfahrt, M.D. and Lynn Wohlfahrt
appeal from the trial court’s judgments favoring John Holloway on Holloway’s
quantum meruit and debt causes of action and the Wohlfahrts’ Deceptive Trade
Practices Act counterclaims.  In three
issues, the Wohlfahrts contend that the trial court erred in (1) granting
judgment on the quantum meruit claim, (2) disregarding the jury’s DTPA
violation findings, and (3) calculating interest on the debt claims.  Holloway brings a separate appeal from the
taxation of costs in an earlier appeal in this case.  We reverse and render on Holloway’s quantum
meruit cause of action, reverse and remand on the Wohlfahrts’ DTPA causes of
action, affirm on Holloway’s debt causes of action, and dismiss Holloway’s
appeal regarding the taxation of appellate costs.

I. 
Background

There is considerable dispute in the
record and on appeal regarding the nature of the relationship between Holloway
and the Wohlfahrts.  Holloway is an
attorney specializing in medical malpractice cases.  Douglas Wohlfahrt is a medical doctor.  It is uncontroverted that Holloway handled
various legal matters for the Wohlfahrts between 1983 and 1992.  It is also uncontroverted that during this
time Dr. Wohlfahrt reviewed medical files for Holloway related to Holloway’s
legal practice, although the number and value of such reviews was hotly
contested.

The Wohlfahrts testified that they had a
bartering arrangement with Holloway, under which Holloway exchanged his legal
services for Dr. Wohlfahrt’s review of files. 
Holloway testified that there was no such arrangement and that the
Wohlfahrts owed him for his legal services.








It is further undisputed that for certain
of his services Holloway billed the Wohlfahrts 
and the Wohlfahrts paid him, but for other services, Holloway did not
bill (until March 1992 when suit was filed) and the Wohlfahrts did not
pay.  Holloway filed the present lawsuit
seeking recovery of his fees for services rendered over the years and for recovery
of a loan he made to the Wohlfahrts.  The
Wohlfahrts counterclaimed alleging DTPA violations, among other things.

This is the second appeal in this
lawsuit.  After the first trial, the
trial court ruled that the Wohlfahrts’ DTPA counterclaims were barred by either
section 16.069 of the Civil Practice and Remedies Code, which requires
counterclaims to be filed within 30 days of the date the answer is due, or the
two-year statute of limitations for DTPA claims.  Tex.
Bus. & Com. Code Ann. § 17.565 (Vernon 2002); Tex. Civ. Prac. & Rem. Code Ann. §
16.069 (Vernon 1997).  On appeal, the
First Court of Appeals reversed, holding that the counterclaims were not
barred.  Wohlfahrt v. Holloway,
No. 01–99–00205–CV, 2001 WL 84212 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied) (not designated for publication). 
The First Court awarded appellate costs against Holloway but remanded to
the trial court for a determination of the costs for two portions of the
reporter’s record.

In the second trial, the jury received a
voluminous charge that included 32 separately numbered questions, requiring as
many as 161 separate answers.[1]  In the parts relevant to this appeal, the
jury found that (1) there was no bartering agreement between the parties; (2)
there was no attorney-client agreement between the parties; (3) Holloway loaned
money to the Wohlfahrts, and the Wohlfahrts paid some of it back; (4) Holloway
knowingly engaged in a false, misleading, or deceptive act or practice that
caused damages to the Wohlfahrts; and (5) Holloway knowingly engaged in an
unconscionable action or course of action that caused damages to the
Wohlfahrts.  The jury also provided
amounts for the “reasonable attorney’s fee[s]” for the services rendered by
Holloway for the Wohlfahrts, for the “reasonable value” of Dr. Wohlfahrt’s
review of medical files for Holloway, and for the “necessary services” of the
Wohlfahrts’ attorneys in the present lawsuit.








Post–verdict, the trial court ruled that
(1) Holloway was entitled to judgment on his pled quantum meruit claim for the
services he provided to the Wohlfahrts; (2) Holloway was entitled to judgment
on his debt claims; and (3) the Wohlfahrts’ counterclaims, including the DTPA
claims, were time-barred.  The court
entered judgment accordingly, awarding Holloway $99,776 plus pre– and
post–judgment interest on the fees and $16,162.22 plus pre– and post–judgment
interest on the debt.

On appeal, Holloway initially contends
that the Wohlfahrts waived their appeal by failing to file a proper notice of
appeal.  The Wohlfahrts contend that the
trial court erred in granting judgment on the quantum meruit claim,
disregarding the jury’s DTPA violation findings, and calculating interest on
the debt claim.  Holloway also complains
of the taxation of costs in the earlier appeal.

II. 
Notice of Appeal

Holloway initially argues that the
Wohlfahrts’ appeal should be dismissed because they failed to provide a proper
notice of appeal.  The trial court signed
a number of final judgments in the case below. 
Some of the judgments superceded earlier judgments.  Holloway asserts that the Wohlfahrts’ notice
of appeal was invalid because it was taken from earlier, superseded judgments
and was not amended to indicate the correct final judgments.[2]  However, the Texas Rules of Appellate
Procedure make it clear that the Wohlfahrts were not required to file a new
notice of appeal when the trial court signed new final judgments.  Under Rule 25.1(a), an appeal is perfected
when a notice of appeal is filed with the trial court clerk.  Tex.
R. App. P. 25.1(a).   Further,
Rule 27.3 states that








After an order or
judgment in a civil case has been appealed, if the trial court modifies the
order or judgment, or if the trial court vacates the order or judgment and
replaces it with another appealable order or judgment, the appellate court must
treat the appeal as from the subsequent order or judgment and may treat actions
relating to the appeal of the first order or judgment as relating to the appeal
of the subsequent order or judgment.

Tex. R. App. P. 27.3.  Thus, by operation of Rules 25.1 and 27.3,
the Wohlfahrts provided a proper notice of appeal.  Consequently, Holloway’s argument is without
merit.

III. 
Quantum Meruit

A. 
The Charge

The Wohlfahrts first contend that the
trial court erred in rendering judgment for Holloway on his quantum meruit
claim.  The parties initially dispute
whether the quantum meruit claim was submitted to the jury.  See Tex.
R. Civ. P. 279 (providing that all independent grounds of recovery not
submitted or requested in the charge are waived unless conclusively
proven).  We find that it was not.

Quantum meruit is an equitable remedy
based upon an implied promise to pay for benefits received.  Heldenfels Bros., Inc. v. City of Corpus
Christi, 832 S.W.2d 39, 41 (Tex. 1992). 
Myrex Indus., Inc. v. Ortolon 126 S.W.3d 548, 550 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied). 
In order to prove quantum meruit, a party must show that (1) valuable
services were rendered or materials furnished; (2) for the person sought to be
charged; (3) which services and materials were accepted by the person sought to
be charged and used and enjoyed by him; (4) under such circumstances as
reasonably notified the person sought to be charged that the plaintiff in
performing such services was expecting to be paid by the person sought to be
charged.  Vortt Exploration Co. v.
Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990); Clear Lake City
Water Auth. v. Kirby Lake Dev., Ltd., 123 S.W.3d 735, 753 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied).








Holloway maintains that the claim was
submitted in Question Two “A,” which asked: “What do you find to be a
reasonable attorney’s fee for the necessary services rendered by John H. Holloway
in handling each of the following legal matters, stated in dollars and
cents?”  Question Two “A” also included an instruction that

[i]n determining what is a
“reasonable attorney’s fee” for legal services and time expended by an attorney
for the use and benefit of a client in legal matters, you are instructed that
you should consider the following factors in deciding the “reasonableness” of
the amount of attorney’s fees to be awarded . . . .

The instruction then listed the factors required by the Texas Supreme
Court to be submitted for the jury’s consideration when awarding attorney’s
fees.  Arthur Andersen & Co. v.
Perry Equipment Corp., 945 S.W.2d 812, 818 (Tex. 1997); see also Comm. on
Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—Business,
Consumer, Insurance & Employment PJC 110.43 cmt. (2003).  Lastly, the question listed
forty–four items or legal matters, and after each, the jury placed a dollar
figure.

There are three reasons why this question
should not be read as presenting a quantum meruit claim: (1) it does not
include the required elements, (2) its placement in the charge suggests that it
is part of a breach of contract submission, and (3) at trial, Holloway denied
that he was seeking recovery under a quantum meruit theory.  We shall discuss each in turn.








First, Question Two “A” does not include
all of the required elements for quantum meruit; indeed, it does not appear to
include any of the required elements in proper form.  See Vortt Exploration, 787 S.W.2d at
944; Clear Lake City Water Auth., 123 S.W.3d at 753; PJC 101.42.  Holloway argues that the court’s instruction
on reasonable attorney’s fees satisfies the elements of quantum meruit;
however, he provides no explanation for this assertion, and, at a minimum,
nothing in the instruction required the jury to consider the fourth element of
quantum meruit, i.e., that services were rendered under such
circumstances as reasonably notified the person sought to be charged that the
plaintiff was expecting to be paid.  See
Vortt Exploration, 787 S.W.2d at 944; Clear Lake City Water Auth.,
123 S.W.3d at 753.[3]

Second, the question’s placement in the
charge makes it clear that it was a submission regarding contract damages.  As explained above, the voluminous charge was
divided into question groupings related to specific causes of action.[4]  Question Two asked whether the parties
“agree[d] to enter into an attorney-client relationship whereby the Wohlfahrts
were to pay John Holloway for his reasonable and necessary legal
services?”  Question Two “B” asked
whether “the Wohlfahrts breach[ed] this agreement with John Holloway?”  Thus, it is clear that these three questions
(Two, Two “A,” and Two “B”) should be read together as a breach of contract
submission, and Question Two “A” should not be read separately as a quantum
meruit submission.[5]








Third, at trial, Holloway denied that he
was seeking recovery under quantum meruit. 
During a discussion of the relevance of certain evidence, the
Wohlfahrts’ counsel suggested Holloway was seeking quantum meruit, and
Holloway, who was representing himself, responded, “I am not ever doing that. .
. .  I am just on the attorney’s fees
agreement pure and simple.”  Later,
during the charge conference, when the Wohlfahrts’ attorney offered a proposed
submission on Holloway’s quantum meruit claim, the judge said to Holloway, “You
don’t want quantum meruit?”  Holloway
replied, “I don’t really care,” and the judge said, “All right.  Then I will leave it out.”[6]  These exchanges demonstrate that Holloway
waived submission of the quantum meruit theory in the jury charge.

Because Question Two “A” did not include
all the required elements for a quantum meruit submission, its placement in the
charge suggests that it was part of a breach of contract submission, and
Holloway expressly denied that he was seeking recovery under quantum meruit, we
hold that the charge did not submit Holloway’s quantum meruit claim to the
jury.

B. 
Conclusive Proof?

However, Holloway would still be entitled
to judgment on his quantum meruit claim if he conclusively proved it.  See Tex.
R. Civ. P. 279.  “An issue is
conclusively established when the evidence is such that there is no room for
ordinary minds to differ as to the conclusion to be drawn from it.”  Triton Oil & Gas Corp. v. Marine
Contractors & Supply, Inc., 644 S.W.2d 443, 446 (Tex. 1982); Abraxas
Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 749 n.6 (Tex. App.—El Paso
2000, no pet.).








The first three elements of quantum meruit
appear to be well established in the record: 
it is undisputed that (1) Holloway rendered valuable services for (2)
the Wohlfahrts and that (3) the Wohlfahrts accepted these services and used and
enjoyed them.  See Vortt Exploration,
787 S.W.2d at 944 (providing elements of quantum meruit recovery).  However, the evidence was strongly contested
regarding the fourth element:  whether
the circumstances were such that the Wohlfahrts were reasonably notified that
Holloway expected to be paid.  See id.

Holloway points to his own testimony that
the Wohlfahrts knew he expected to be paid and to the fact that he requested
payment for certain services and the Wohlfahrts paid for those services.  But the Wohlfahrts themselves testified
repeatedly and consistently that they did not believe Holloway expected to be
paid except on the few occasions when he told them that a particular service
had costs out of the ordinary.  On those
occasions, he told them how much it was going to cost, and they paid the
amount.  Contrary to Holloway’s
assertion, the evidence that he sometimes told the Wohlfahrts that he expected
to be paid and got paid is inferential evidence that on other occasions, when
he did not tell them that there were extraordinary costs, he did not expect to
be paid.  Holloway’s services for the
Wohlfahrts occurred over a nine–year period; that Holloway did not submit a
bill for services and demand payment until after the parties had a falling out
and suit was filed is further evidence that Holloway did not expect to be paid
at the time services were rendered.[7]  At a minimum, it suggests that the Wohlfahrts
could have reasonably believed that Holloway did not expect to be paid.  Thus, there was some evidence negating the
fourth element of quantum meruit.  See
id.  Accordingly, Holloway did not
conclusively establish his quantum meruit cause of action, and the trial court
erred in entering judgment in his favor on that claim.  See Tex.
R. Civ. P. 279; Triton Oil & Gas, 644 S.W.2d at 446.  We sustain the Wohlfahrts’ first issue.








IV. 
“Time-Barred” DTPA Claims

The Wohlfahrts next contend that the trial
court erred in holding that their DTPA counterclaims were time-barred.  In response to questions “13” and “13A,” the
jury found that Holloway knowingly engaged in both (1) false, misleading, or
deceptive acts or practices and (2) an unconscionable action or course of
action that caused damages to the Wohlfahrts. 
In response to Question “13B,” the jury found that Holloway’s conduct
caused the Wohlfahrts $4,469 in monetary damages, and in response to “13D,” the
jury found $100 in mental anguish damages. 
The court did not submit, and the parties did not request, any question
regarding the accrual of the Wohlfahrts’ DTPA causes of action or the
application of the discovery rule. 
However, in its judgment, the trial court held that the Wohlfahrts’ DTPA
counterclaims were time–barred.

Holloway’s arguments (in the trial court
and on appeal) regarding whether the DTPA counterclaims were time-barred break
down into two categories: (1) those based on section 16.069 of the Civil
Practice and Remedies Code, which requires counterclaims to be filed within 30
days of the date the answer is due, and (2) those based on the running of the
two-year statute of limitations for DTPA claims.  Tex.
Bus. & Com. Code Ann. § 17.565; Tex.
Civ. Prac. & Rem. Code Ann. § 16.069.[8]

A. 
Section 16.069








In the prior appeal, the First Court of
Appeals addressed Holloway’s argument pertaining to section 16.069, holding
that the DTPA counterclaims related back to the first filed counterclaim and
thus were not time-barred under that section. 
Wohlfahrt, 2001 WL 84212, at *4 (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (Vernon
1997)).  Holloway contends that the First
Court was “simply wrong” in holding that the counterclaims were not
time–barred.  However, under the law of
the case doctrine, we are bound to follow the prior ruling unless there was a
change of issues or facts in the re-trial. 
Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986).[9]  Holloway offers no argument regarding changed
issues or facts between the first and second trials in regard to the application
of section 16.069, and our review of the record reveals no such changes.  Thus, the First Court’s prior ruling that
section 16.069 does not bar the Wohlfahrts’ DTPA counterclaims still stands.

B. 
Statute of Limitations








Also in the prior appeal, after finding
section 16.069 did not bar the counterclaims, the First Court considered
whether the DTPA statute of limitations barred the claims.  Tex.
Bus. & Com. Code Ann. § 17.565 (providing two-year limitations
period for DTPA claims); Wohlfahrt, 2001 WL 84212, at *4.  Considering the issue in a pre-trial context,
the First Court held that limitations did not bar the claims. 
Wohlfahrt, 2001 WL 84212, at *4.  The court based this
decision in part on the fact that Holloway had not provided any evidence to
show when the Wohlfahrts discovered their cause of action.  See id. at *3-4.  The First Court’s opinion, however, did not
prevent the parties from offering evidence regarding limitations on remand.

Holloway initially argues that in the live
pleadings for the retrial the Wohlfahrts failed to plead the discovery rule as
a defense to his limitations pleading. 
Holloway is simply incorrect. 
Although, as Holloway points out, the Wohlfahrts did not include the
discovery rule in their live answer for the retrial, the Wohlfahrts did plead
the discovery rule in their live counterclaim pleading.  See Wohlfahrt, 2001 WL 84212, at *4
(holding that the Wohlfahrts pleaded the discovery rule).  Since Holloway raised his limitations defense
in regard to the counterclaims, the most logical place for the Wohlfahrts to
raise the discovery rule would have been in their pleadings concerning the
counterclaims.  They did so;
consequently, Holloway’s arguments to the contrary are without merit.[10]








In the re-trial, the DTPA counterclaims
were submitted as questions to the jury. 
Holloway contended in the trial court, and contends in the present
appeal, that the Wohlfahrts waived their discovery rule defense because they
failed to prove and secure jury findings on it, citing Woods v. William M.
Mercer, Inc., 769 S.W.2d 515 (Tex. 1988). 
However, as the supreme court pointed out in Woods, the burden to
prove and secure findings on the discovery rule arises only once the accrual of
a cause of action has been established and limitations has been shown to have
run.  769 S.W.2d at 517-18; see also
Tex. Am. Corp. v. Woodbridge Joint Venture, 809 S.W.2d 299, 303 (Tex.
App.—Fort Worth 1991, writ denied); Wingate v. Acree, No.
14-01-00851-CV, 2003 WL 1922569, at *2 (Tex. App.—Houston [14th Dist.] April
24, 2003, no pet.) (mem. op.).  In other
words, “[t]he defendant . . . bears the initial burden to plead, prove, and
secure findings to sustain its plea of limitations.”  Woods, 769 S.W.2d at 517.[11]  Here, Holloway did not request or obtain a
jury finding regarding the accrual of the cause of action or the running of the
statute of limitations; he also made no argument in the trial court or in his
appellate brief that he had established either issue as a matter of law.[12]  Thus, the Wohlfahrts were never required to
request an issue or present evidence regarding the discovery rule; the burden
of production never shifted to them because Holloway never met his initial
burden.  Id. at 517-18.  Accordingly, the Wohlfahrts’ alleged failure
to offer proof and obtain jury findings regarding the discovery rule is of no
consequence.

Because we find that the trial court erred
in granting a jnov on the DTPA counterclaims on the basis of the claims being
time-barred, we sustain the Wohlfahrts’ second issue and reverse and remand for
consideration of Holloways additional arguments regarding the counterclaims.

V. 
Interest








The Wohlfahrts lastly contend that the
trial court erred in its calculation of post-judgment interest on the debt
award to Holloway.  Specifically, on
appeal, the Wohlfahrts contend that under changes passed in 2003, section
304.003 of the Texas Finance Code required the trial court to set post-judgment
interest at 5%, not the 10% set by the trial court in its judgment.  Tex.
Fin. Code Ann. § 304.003 (Vernon Supp. 2004).  However, in the trial court, the only
argument the Wohlfahrts raised regarding post-judgment interest was that under
section 304.103, it should have been set at 6%, the same rate that the court
used for prejudgment interest in the judgment. 
Id. § 304.103.[13]  To have preserved error, a party’s argument
on appeal must comport with its argument in the trial court.  E.g., Taylor v. Am. Fabritech, Inc.,
132 S.W.3d 613, 621 & n.21 (Tex. App.—Houston [14th Dist.] 2004, pet.
denied).  The Wohlfahrts’ objection in
the trial court did not apprise the court of the alleged error that the
Wohlfahrts now complain about on appeal. 
See Tex. R. App. P. 33.1.  Accordingly, we find that the Wohlfahrts
waived their objection to the court’s calculation of post-judgment interest by
not making it in the trial court.  See
Hachar v. Hachar, 153 S.W.3d 138, 145 (Tex. App.—San Antonio 2004, no pet.
h.) (holding that party waived argument regarding post-judgment interest rate
by not making it in the trial court); El Paso Dev. Co. v. Berryman, 769
S.W.2d 583, 592 (Tex. App.—Corpus Christi 1989, writ denied) (holding that
party waived argument regarding compounding of post-judgment interest by not
making it in the trial court).  The
Wohlfahrts’ third issue is overruled.

VI. 
Holloway’s Appeal:  Taxation of
Costs

We turn now to Holloway’s appeal pertaining to taxation of
costs in the earlier appeal to the First Court of Appeals.  As mentioned, Holloway won in the first trial
in this case, but the First Court reversed that judgment and assessed costs
against Holloway.  Of the four court
reporters who prepared portions of the record for the appeal, only two filed
cost certificates; thus, the First Court’s mandate indicated that the costs for
the other two reporters was “unknown.” 
The First Court then ordered the trial court to determine and assess the
costs for those two reporters.[14]  The trial court heard evidence regarding
costs in two hearings.  The trial court
then ordered that the First Court’s mandate be reformed to include as costs the
amounts claimed by the remaining two reporters.








In his appeal, Holloway primarily contends that upon
receiving the mandate the trial court should have determined and assessed the reasonable
and necessary costs and not simply the actual costs assessed by the
reporters and paid by the Wohlfahrts. 
Holloway argues both that the court reporter’s fees are unreasonable and
that portions of the record brought on appeal were not necessary for the
appeal.  In response, the Wohlfahrts
filed a motion to dismiss and an appellees’ brief asserting, respectively, that
the Fourteenth Court of Appeals does not have jurisdiction over the taxation
issues from the first appeal and that the trial court was not authorized to
consider the reasonableness and necessity of the costs.  We agree with the former contention and
hold that we are without jurisdiction to consider Holloway’s appeal.

We begin by noting that this area of law
is somewhat murky.  The Texas Supreme
Court has held that a request to “retax” costs must be made in the court in
which the costs were incurred.  E.g.,
Reaugh v. McCullom Exploration Co., 167 S.W.2d 727, 727-28, 140 Tex. 322,
324-25 (1943) (dismissing complaint regarding taxation of costs for want of
jurisdiction); Southland Life Ins. Co. v. Statler, 170 S.W.2d 714, 715,
141 Tex. 110, 112 (1943) (orig. proceeding); see also Pitts v. Dallas County
Bail Bond Bd., 23 S.W.3d 407, 417 (Tex. App.—Amarillo 2000, pet. denied)
(“Correction of errors in specific items of costs is sought by a motion to
retax costs.”); Lopez v. Cent. Plains Reg’l Hosp., 859 S.W.2d 600, 607
(Tex. App.—Amarillo 1993, no writ) (considering taxation of costs issue raised
as cross-point).  The supreme court
further held that the cost of a reporter’s record for use in perfecting an
appeal to a court of appeals is cost accruing in that court of appeals.  E.g., Reaugh, 167 S.W.2d at 727; 140
Tex. at 324; Southland Life Ins., 170 S.W.2d at 715, 141 Tex. at 112.








However, in City of Ingleside v. Stewart, 554 S.W.2d 939,
948 (Tex. App.—Corpus Christi 1977, writ ref’d n.r.e.), the Corpus Christi
Court of Appeals suggested that statutory changes have rendered the holdings in
Reaugh and Southland Life no longer valid.  Specifically, the Corpus Christi Court held
that, because section 52.047 of the Government Code (formerly article 2324 of
the Texas Revised Civil Statutes) states that a district court is to determine
the reasonableness of a reporter’s fee when objected to, a motion to retax is
no longer permissible in a court of appeals. 
Tex. Gov’t Code Ann. §
52.047 (Vernon 1998); Stewart, 554 S.W.2d at 948.  Even if the Corpus Christi Court is correct
in regard to the reasonableness of the fee charged, a matter we need not decide
at this juncture, the court of appeals still appears to be the correct venue
for arguments regarding the necessity of portions of the appellate record.  See Lopez, 859 S.W.2d at 607
(addressing cost issue raised in cross-point); Planet Plows, Inc. v. Evans,
600 S.W.2d 874, 877 (Tex. Civ. App.—Amarillo 1980, no writ) (addressing cost
issue raised in motion for rehearing and motion to retax costs); Perkins
Constr. Co. v. Ten‑Fifteen Corp., 545 S.W.2d 494, 501-02 (Tex. Civ.
App.—San Antonio 1976, no writ) (addressing
cost issue raised by appellant).








Notwithstanding the unsettled nature of
this area of law, the proceedings about which Holloway complains were part and
parcel of the first appeal in this case; they played no role in the second
trial or in the second appeal brought by the Wohlfahrts.  Holloway’s appeal is not from a motion to retax costs filed
in the trial court.  See Holloway v.
Butler, 828 S.W.2d 810, 811 (Tex. App.—Houston [1st Dist.] 1992, writ
denied) (considering appeal from district court’s denial of motion to retax); see
also Price v. State, 856 S.W.2d 226, 227 (Tex. App.—Fort Worth 1993, writ
ref’d) (noting that appeal was from judgment and not from the overruling of the
motion to retax).  The record does not
reflect that any such motion was filed in the trial court.  The trial court held hearings and made its
rulings strictly pursuant to the First Court’s specific directive regarding
costs.  The trial court then assessed
costs pursuant to the First Court’s order. 
If Holloway
wished to assert error in the First Court’s order, he could have filed a motion
for rehearing in the First Court or a petition for review or for writ of
mandamus in the Texas Supreme Court.  See
Tex. R. App. P. 49.1 (permitting
motions for rehearing in courts of appeals); 52.1-52.11 (governing original
proceedings in Texas Supreme Court); 53.1-56.5 (governing petitions for review
to the Texas Supreme Court).  Holloway
cites no authority, and we are aware of none, that permits a wholly new appeal
to be taken from such a procedure (whether the appeal is assigned to the First
Court or the Fourteenth).  Accordingly,
we grant the Wohlfahrts’ motion and dismiss Holloway’s appeal for want of jurisdiction.[15]

VII. 
Conclusion

Based on the foregoing, we reverse and
render the portions of the trial court’s judgments awarding Holloway recovery
on his quantum meruit cause of action, we reverse and remand the portions
holding that the Wohlfahrts’ DTPA causes of action were time-barred, and we
affirm the portions awarding Holloway recovery on his debt claims.  We dismiss Holloway’s appeal regarding the
taxation of appellate costs for want of jurisdiction.

 

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Opinion filed June 2, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Edelman.











[1]  The questions
were grouped into related blocks such as “Two,” “Two ‘A,’” and “Two ‘B.’”
Several questions also had subparts, mostly, but not strictly, related to
damages elements.  Many of the questions
went unanswered because of the jury’s responses to other related questions.





[2]  There were
three cause numbers below, which were combined for trial.  The original final judgments for these cause
numbers were signed on June 26, 2003. 
The Wohlfahrts filed their notice of appeal on September 24, 2003.  The trial court then signed new final
judgments on September 24, 2003, and again on October 29, 2003.





[3]  Under Rule
279, if a ground of recovery consists of more than one element and one or more
elements is submitted and one or more is omitted, then the omitted elements are
deemed found if supported by factually sufficient evidence.  Tex.
R. Civ. P. 279.  However, the rule
further requires that for any elements of a ground of recovery to be considered
submitted, the elements must be “necessarily referable thereto.”  Id.; see also Clayton W. Williams,
Jr., Inc. v. Olivo, 912 S.W.2d 319, 327 (Tex. App.—San Antonio 1995) (explaining
that the “necessarily referable” requirement is designed to give fair notice
and that if the elements are not necessarily referable to the ground of
recovery urged then the ground is waived), aff’d in relevant part, 952
S.W.2d 523 (1997).  As will be explained
in the text following this footnote, even if the instruction on attorney’s fees
could be read as including elements common to a claim of quantum meruit, the
structure of the charge indicates that these elements are not necessarily
referable to that cause of action.  They
are instead integral parts of a breach of contract submission.  Because the court did not necessarily submit
any elements of quantum meruit, we need not deem any remaining elements in
support of the theory.  Clayton W.
Williams, Jr., Inc., 952 S.W.2d at 529.





[4]  For example,
the submission on the Wohlfahrts’ DTPA causes of action included Question 13,
asking about false, misleading, or deceptive acts; Question 13A, asking about
unconscionable actions; Question 13B, asking about damages caused; Question
13C, asking whether the conduct was committed knowingly; and Question 13D,
asking about mental anguish.





[5]  Question Two
“A” is not expressly contingent on a positive answer to Question Two.  This apparently lead the jury to ask during
deliberations whether Two “A” was contingent on their answer to Two.  The judge who presided over the trial and
submitted the charge was a visiting judge and was not on the bench when the
jury asked this question.  After
conferring with the parties (who disagreed as to whether the one question
should be contingent on the other), the sitting judge replied to the jury that
they should just answer the charge as submitted.

Earlier, during the charge conference, the
visiting judge initially conditioned Two “A” on Two but subsequently removed
the condition when Holloway objected. 
Holloway did not mention quantum meruit in making his objection.





[6]  Holloway
points out that at the beginning of the charge conference the judge indicated
that he intended to charge the jury on both breach of contract and quantum
meruit; however, this statement clearly occurred before the exchange detailed
above in which Holloway expressed ambivalence toward a quantum meruit
submission, and the court stated that it was leaving such submission out of the
charge.





[7]  Whether this
was due to the alleged, but not found, bartering arrangement, the social
relationship between the parties, or some other motive of Holloway is not clear
or necessary to establish in order to defeat the quantum meruit claim.





[8]  Holloway
additionally contends that the Wohlfahrts waived any argument regarding the
trial court’s time-bar finding by not expressly attacking the trial court’s
grant of his motion for judgment notwithstanding the verdict either in the
trial court or on appeal.  Although
Holloway may be correct that the Wohlfahrts did not attack the grant of his
motion by specifically identifying the motion, he is incorrect in suggesting
the Wohlfahrts have not attacked the trial court’s action.  The Wohlfahrts asserted with specificity both
in the trial court and on appeal that the trial court erred in disregarding the
jury’s DTPA liability findings on the basis that they were time-barred.  Accordingly, they have not waived these
arguments.  See Tex. R. App. P. 33.1(a), 38.1(h).





[9]  Under the law
of the case doctrine, a court considering a subsequent appeal is ordinarily
bound by a prior decision in the case.  See
Briscoe v. Goodmark Corp., 102 S.W.3d 714, 716 (Tex. 2003).  This is true unless there is a substantial change of
issues or fact in the re-trial.  Hudson,
711 S.W.2d at 630.  The court in Briscoe identified
another exception to the doctrine:  when
the appellate court determines that its first decision was clearly wrong.  102 S.W.3d at 716-17.  However, the court’s explanation of this
exception specifically contemplates that the second appeal is to the same
court.  Id.  Although a court can always reconsider its
own prior holdings, see id., one intermediate court of appeals is not
authorized to overrule the holdings of another intermediate court of
appeals.  Long v. State, 820
S.W.2d 888, 890 (Tex. App.—Houston [1st Dist.] 1991, pet. ref’d); see also
Thomas v. Collins, 860 S.W.2d 500, 502 (Tex. App.—Houston [1st Dist.]  1993, writ denied) (adopting prior holding by
sister court without reanalyzing issue). 
The proper venue for complaining that a court of appeals ruled
erroneously is by motion for rehearing to that court or by petition for review
or mandamus to the Texas Supreme Court.





[10]  Indeed, there
appear to be no significant changes regarding the discovery rule between the
live pleadings in the first trial and the live pleadings in the second trial.





[11]  In Woods,
the defendant met its burden by establishing that the plaintiff’s cause of
action was barred as a matter of law; however, the plaintiff then failed in his
subsequent burden to plead, prove, and secure findings on the discovery
rule.  769 S.W.2d at 517-18.





[12]  The only
argument Holloway made in the trial court was that because the Wohlfahrts’
pleadings acknowledged that all legal matters he handled for them were closed
by 1992, the counterclaim filed in 1995 was beyond the two-year limitations
period.  However, the First Court clearly
held that the 1995 DTPA counterclaim related back to the original counterclaims
filed in 1993; thus, the DTPA counterclaims were not barred by limitations
based on the Wohlfahrts’ pleadings alone. 
Wohlfahrt,
2001 WL 84212, at *4 (citing Barraza v. Koliba, 933 S.W.2d 164, 167-68
(Tex. App.—San Antonio 1996, writ denied) (holding that counterclaim amended to
include DTPA claim related back to timely filed counterclaim because it arose
from the same transaction)).  Because nothing has changed in regard to this
issue between the first and second appeals, we are bound by the First Court’s
prior ruling as the law of the case.  See
Briscoe, 102 S.W.3d at 716; Hudson, 711 S.W.2d at 630; supra n. 10.





[13]  Section
304.103 states in its entirety: “The prejudgment interest rate is equal to the
postjudgment interest rate applicable at the time of judgment.”  Tex. Fin. Code Ann. § 304.103.





[14]  The First
Court specifically ordered the trial court “to hold a hearing to determine the
costs of the items designated as ‘Unknown’ [in the First Court’s mandate] and
to then assess costs as set forth in the judgment and mandate of this Court.”





[15]  The Wohlfahrts
filed a motion to strike certain items from the appendix attached to Holloway’s
reply brief.  This motion was also taken
with the case.  Because we hold that we
do not have jurisdiction to consider Holloway’s appeal, we overrule this motion
as moot.